**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREW LEE, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN, | |
| Defendants. | |

Plaintiff Drew Lee ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon the investigation by Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.  The investigation by counsel included, among other things, a review of Co-Diagnostics, Inc.'s ("Co-Dx" or the "Company") public filings with the United States ("U.S.") Securities and Exchange Commission ("SEC"), press releases issued by the Company, public conference calls, media and news reports about the Company, and publicly available trading data relating to the price and volume of Co-Dx securities.

## NATURE OF THE ACTION

1.      This action is a securities action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, brought by Plaintiff on behalf of a class of all persons and entities who purchased the publicly traded securities of Co-Dx during the period May 12, 2022 through the close of the market on August 11, 2022 (4:00 p.m. ET), inclusive (the "Class Period").

2.     Co-Dx purports to develop, manufacture, and sell reagents used for diagnostic tests that function via the detection and/or analysis of nucleic acid molecules (DNA or RNA), including robust and innovative molecular tools for detection of infectious diseases, liquid biopsy for cancer screening, and agricultural applications.

3.     On April 6, 2020, Co-Dx announced that it had received an Emergency Use Authorization for its Logix Smart™ COVID-19 detection test from the Food and Drug Administration, allowing it to commence sales of the test to laboratories certified by the Center for Medicare and Medicaid Services under the Clinical Laboratories Improvements Act ("CLIA") to accept human samples for diagnostics testing throughout the U.S.  Co-Dx has sold its Logix Smart™ COVID-19 test to such CLIA labs since that time.  Co-Dx services over 500 centralized lab customers, including about 200 U.S. CLIA labs, 130 foreign labs, and approximately 200 labs in India certified by the National Accreditation Board for Testing and Calibration Laboratories.

4.     During the Class Period, Defendants repeatedly touted the Logix Smart™ COVID-19 Test, reassuring investors about the demand for the product.  At the same time, Defendants (as defined herein) failed to disclose that: (1) demand for the Logix Smart™ COVID19 Test had plummeted throughout the quarter ended June 30, 2022, and (2) as a result, Defendants' positive statements about the demand for the Logix Smart™ COVID-19 Test lacked a reasonable basis.

5.     On August 11, 2022, Co-Dx shocked investors when, after the market closed, the Company issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the quarter ended June 30, 2022, in which the Company disclosed revenue of $5.0 million for the quarter ended June 30, 2022, down from $27.4 million during the prior year period, a decline of almost 82%.  The Company primarily attributed the decrease to lower demand of the Logix Smart™ COVID-19 Test.

6.     On this news, Co-Dx's common stock price declined $1.98 per share, or 30.65%, from a closing price of $6.46 per share on August 11, 2022, to close at $4.48 per share on August 12, 2022.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) because Co-Dx's common stock traded on the Nasdaq exchange in this District throughout the Class Period and Defendants made materially false and misleading representations to investors that were disseminated to investors in this District.

11.     In connection with the material misrepresentations of facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, purchased Co-Dx's publicly traded securities during the Class Period and was damaged thereby.

13.     Defendant Co-Dx is incorporated in Utah and its headquarters are located at 2401 S. Foothill Drive, Suite D, Salt Lake City, Utah 84109.  The Company's common stock is listed on the Nasdaq under the ticker symbol "CODX".

14.     Defendant Dwight H. Egan ("Egan") is and has served as the Company's Chief Executive Officer, President and Chairman of the Board throughout the Class Period.

15.     Defendant Brian L. Brown ("Brown") is and has served as the Company's Chief Financial Officer and Secretary throughout the Class Period.

16.     Defendants Egan and Brown are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Co-Dx's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.     Co-Dx and the Individual Defendants are referred to collectively as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Co-Dx purports to develop, manufacture, and sell reagents used for diagnostic tests

that function via the detection and/or analysis of nucleic acid molecules (DNA or RNA), including

robust and innovative molecular tools for detection of infectious diseases, liquid biopsy for cancer

screening, and agricultural applications.

19.     On April 6, 2020, Co-Dx announced that it had received an Emergency Use

Authorization for its Logix Smart™ COVID-19 detection test from the Food and Drug

Administration, allowing it to commence sales of the test to laboratories certified by the Center for

Medicare and Medicaid Services under the Clinical Laboratories Improvements Act ("CLIA") to

accept human samples for diagnostics testing throughout the U.S.  Co-Dx has sold its Logix

Smart™ COVID-19 test to such CLIA labs since that time.  Co-Dx services over 500 centralized

lab customers, including about 200 U.S. CLIA labs, 130 foreign labs, and approximately 200 labs

in India certified by the National Accreditation Board for Testing and Calibration Laboratories.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on May 12, 2022.  On that date, the Company issued a

press release and filed a report with the SEC on Form 8-K that disclosed its financial results for

the quarter ended March 31, 2022 (the "May 12, 2022 Press Release").  The May 12, 2022 Press

Release quoted Defendant Egan as stating:

> "*While we remain very confident about the long-term potential of our business, our ability to accurately forecast Logix Smart™ COVID-19 Test sales through the balance of the year has diminished due to decreased mask mandates in the United States, continued emergence and spread of new variants, and persistently low vaccination rates in many parts of the world. As a result, it has become difficult to predict with any level of precision the cumulative impact of these and other factors on our future financial results.* For these reasons, we are not providing quarterly guidance at this time and will reassess this position in the future[.]"

21.     On that same day, during a conference call with investors and analysts after the

disclosure of Co-Dx's financial results, Defendant Brown similarly stated:

> Turning now to our visibility around the outlook for the balance of the year. While
> we experienced strong demand for our products during the first quarter of 2022,
> changes in our operating environment and markets have restricted our near term
> visibility. We will continue to navigate the near term environment with caution, but
> as a result, we'll not be providing quarterly guidance at this time.
>
> **To be clear, we remain very confident about the long-term potential of our
> business and the demand for our products. Our ability to accurately forecast
> Logix Smart COVID-19 test sales through the balance of the year has diminished
> due to decreased mask mandates in the United States, continued emergence and
> spread of new variants and persistently low vaccination rates in many parts of the
> world.**
>
> **Furthermore, we are experiencing sizable fluctuations in order patterns from our
> customers that are not cleanly captured in a particular quarter as testing
> requirements continue to vary across the many geographic regions we serve. As
> a result, it has become difficult to predict with an expected level of precision the
> cumulative impact of these and other factors on our future financial results.**

22.     During the same conference call, Defendant Brown stated the following regarding

demand for the Logix Smart™ COVID-19 detection test:

> **[Analyst]:** ". . . are you already seeing a decline in customer orders [for the Logix
> Smart detection test] . . . [o]r are you refraining from providing a guidance mainly
> because it's tough to like predict the environment going forward?"
>
> **Defendant Brown**: ". . . *it's more about the timing and being able to forecast the
> timing of orders is the bigger issue.  It's not necessarily a demand issue that we're
> seeing.  It's more of just timing of being able to accurately forecast what's coming
> in.*"

23.     During the same conference call, Defendant Brown also stated the following

regarding demand for the Logix Smart™ COVID-19 detection test:

> **[Analyst]:** "I just want to be clear on the guidance. I mean based on all the factors
> you laid out, it sounds like you don't expect demand for COVID-19 testing go away
> in 2022. You're just not sure the timing of when you will get the orders, but you
> still think there will be some level of demand for the remainder of the year. Is that
> accurate?
>
> **Defendant Brown:** "*Yes, you're absolutely right.*"

24.     On June 15, 2022, the Individual Defendants presented at the Sidoti Summer 2022 Small Cap Virtual Conference.  During the Q&A portion of the presentation, Defendant Egan made the following statement regarding continued demand for COVID testing products throughout 2022 and 2023:

> **Sidoti:** "And if you look at the other side of the business - the centralized lab test that you're selling now.  Do you think there will be demand for covid type testing for at least the next year or two?"

> **Defendant Egan:** "Well, you know the experts tell us that covid testing is gonna be – and, you know, the covid virus is gonna be with us until the end of time, and so, you know, we've had, *I think we're gonna have continued demand, where every kind of technology, the centralized lab type approach as well as the at home point of care, they're all gonna used to their highest and best use, and they're gonna be complementary to each other*.  So we don't, in fact, view that the introduction of our testing technology will obviate the need for centralized Labs."

25.     The statements referenced in ¶¶ 20-24 were materially false and/or misleading because at the time Defendants made these representations, Co-Dx was experiencing a significant falloff in demand for its Logix Smart™ COVID-19 Test.  Contrary to Defendants' representations, (1) demand for the Logix Smart™ COVID-19 Test had plummeted throughout the quarter ended June 30, 2022, and (2) as a result, Defendants' positive statements about the demand for the Logix Smart™ COVID-19 Test lacked a reasonable basis.

## The Truth Begins to Emerge

26.     On August 11, 2022, after the market closed, Co-Dx issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the quarter ended June 30, 2022 and conducted a conference call with investors and analysts.  Defendants shocked investors by disclosing revenue of $5.0 million for the quarter ended June 30, 2022, down from $27.4 million during the prior year period, a decline of almost 82%.  The Company primarily attributed the decrease to lower demand of the Logix Smart™ COVID-19 Test.  Specifically, Defendant Egan was quoted as stating that "[o]ur second quarter results reflect lower volumes for

our Logix Smart™ COVID-19 Test, which we believe is primarily the result of a reduction in

mandated testing in travel and public venues and in government funding for testing programs."

27.    On the August 11, 2022 conference call with investors and analysts, Defendant

Egan admitted that, contrary to their prior representations, Defendants were aware of the reduced

demand throughout the quarter:

> **[Analyst]:** Do you have any sense on what inventory levels are at your distributors?
> Do you think the second quarter was a quarter where distributors let inventory
> levels come down as demand declined? And do you think that they're at historically
> low levels at this point and likely to restock? Or do you think that they have enough
> inventory on hand from the current level of demand?
>
> **Defendant Egan:** And of course, one that we keep a close eye on every day. And
> **we certainly saw the -- as the second quarter progressed, the falloff and we've
> cited the reasons we think that falloff occurred** in terms of public funding of
> testing initiatives and just the swaging of the pressure put on by Omicron . . . .

28.    On August 12, 2022, Co-Dx's common stock price declined $1.98 per share, or

30.65%, from a closing price of $6.46 per share on August 11, 2022, to close at $4.48 per share on

August 12, 2022.

## LOSS CAUSATION/ECONOMIC LOSS

29.    During the Class Period, as detailed herein, Defendants engaged in a scheme to

deceive the market and a course of conduct that artificially inflated Co-Dx's share price and

operated as a fraud or deceit on Class Period purchasers of Co-Dx shares by misrepresenting Co-

Dx's financial condition, results of operations and business prospects.  Defendants achieved this

by making positive statements about the Company's business and demand for its products, while

they knew, or at least recklessly disregarded, that the Company was experiencing material negative

conditions that impaired its financial condition, results of operations and business prospects, and

market price of its shares.  Later, however, when Defendants' prior misrepresentations were

disclosed and became apparent to the market, the price of Co-Dx stock fell precipitously as the prior artificial inflation came out of Co-Dx's share price.

30.     As a result of their purchases of Co-Dx shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

31.     As a direct result of the public revelations regarding the truth about the condition of Co-Dx's business and the negative adverse factors that had been impacting Co-Dx's business during the Class Period, the price of Co-Dx's shares materially declined.  This drop removed the inflation from Co-Dx's share price, causing real economic loss to investors who purchased those shares during the Class Period.

32.     The decline in Co-Dx's share price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Co-Dx's share price decline negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## ADDITIONAL SCIENTER ALLEGATIONS

33.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Co-Dx, their control over, and/or receipt and/or modification of Co-Dx's allegedly materially misleading misstatements, and/or their

associations with the Company which made them privy to confidential proprietary information concerning Co-Dx, participated in the fraudulent scheme alleged herein.

34.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

35.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of Co-Dx, issued statements and press releases on behalf of Co-Dx and had the opportunity to commit the fraud alleged herein.

## NO SAFE HARBOR

36.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

37.     Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, or the forward-looking statement was authorized and/or approved by an executive officer of Co-Dx who knew that those statements were false when made.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded securities of Co-Dx during the Class Period.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  As of August 9, 2022, Co-Dx had over 33 million shares of common stock outstanding, which were actively traded on the Nasdaq in an efficient market.

40.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

(b)     whether Defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

(c)     whether Defendants participated directly or indirectly in the course of conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and the proper measure of such damages.

43.     At all relevant times, the market for Co-Dx's common stock was an efficient market for the following reasons, among others:

(a)     the Company's common stock met the requirements for public listing and was listed and actively traded on the Nasdaq, a highly efficient market;

(b)     as a regulated issuer, the Company filed periodic public reports with the SEC;

(c)     the Company regularly issued press releases which were carried by national news wires, and each of these releases was publicly available and entered the public marketplace; and

(d)     a number of securities analysts regularly followed and analyzed the Company, as well as issued reports concerning the Company.

44.     As a result, the market for the Company's publicly traded common stock promptly digested current information with respect to Co-Dx from all publicly available sources and reflected such information in the price of the Company's common stock.   Under these circumstances, all purchasers of the Company's publicly traded common stock during the Class Period suffered similar injury through their purchase of the publicly traded common stock of Co-Dx at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

45.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

46.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Co-Dx publicly traded securities during the Class Period.

48.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Co-Dx's publicly traded securities.  Plaintiff and the Class would not have purchased Co-Dx securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

49.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Co-Dx securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

50.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Co-Dx within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 19, 2022                   Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ J. Alexander Hood II*
                                            J. Alexander Hood II
                                            Jeremy A. Lieberman
                                            James M. LoPiano
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665

ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 7391FE8F-7169-4798-A85A-85E06D37DE02

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Drew Lee _____, make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities

Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of

1995.

2.      I have reviewed a Complaint against Co-Diagnostics, Inc. ("Co-Diagnostics" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Co-Diagnostics securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Co-Diagnostics securities during the class period, including providing

testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the

most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Co-

Diagnostics securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have

not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the

class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs

and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed __9/15/2022_____
                    **(Date)**

DocuSigned by:

_Drew Lee_____
**(Signature)**
—39804358EF26456...

Drew Lee_____
**(Type or Print Name)**

**Co-Diagnostics, Inc. (CODX)**                                                        **Lee, Drew**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 5/31/2022 | 1,000 | $5.0200 |
| Purchase | 6/2/2022 | 200 | $5.1900 |
| Purchase | 6/8/2022 | 100 | $5.5300 |
| Purchase | 6/23/2022 | 300 | $5.6500 |
| Purchase | 6/23/2022 | 100 | $5.4200 |
| Sale | 5/24/2022 | (1,000) | $4.6800 |
| Sale | 6/1/2022 | (1,000) | $4.9900 |
| Sale | 6/13/2022 | (1,000) | $5.0600 |
| Sale | 6/13/2022 | (1,000) | $4.9700 |
| Sale | 7/13/2022 | (200) | $5.7800 |